ROBERT ROWE, *alias* BOB ROE, and ARTIE COLSON, *Plaintiffs in Error, v.* THE STATE OF FLORIDA, *Defendants in Error.*

En Banc.

Opinion filed June 25, 1929.

*Whitaker Brothers,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

BUFORD, J.—In this case the State relied for a conviction very largely on the alleged confession of the defendants.

There is evidence in the record that the alleged confession was freely and voluntarily made in the presence of an alleged officer in a cell in the county jail and within hearing of two other officers planted in an adjoining cell to hear what was said.

The alleged confession of Rowe was obtained, if at all, under such condition as to make it of no value in a court of justice. The record convinces us that one of the police officers beat Rowe with a piece of garden hose in an effort to extort a confession from him and that although they failed at that moment to get the desired statement, they followed this up by planting officers in and about his cell to question and annoy him during the same night and immediately after the beating with the hose and while the accused was still feeling the effects of the unlawful treatment which had been imposed upon him and that this was done to procure some statement which could be used against the accused without any warning having been given to the accused of their legal rights in the premises.

Alleged confessions procured by such means should not be received by courts as the basis for convictions.

In Nickels v. State, 90 Fla. 659, 106 So. R. 479, this Court says:

The law is well settled that when an extra judicial confession is made in conformity with the rule above stated it is admissible, though it may not be the spontaneous utterance of the accused. The fact that the confession was obtained by questioning the prisoner will not alone exclude it, even though some of the questions be leading and assume guilt, if the confession in fact emanates from the free will of the accused and is without inducement of hope, fear or other illegal influence. Davis v. State, decided at this term. See also Ziang Sung Wan v. United States, 266 U. S. 1,— Sup. Ct. R.—decided October 13, 1924; Underhill's Crim. Ev. (3rd Ed.) 352; Curry v. State, 203 Ala. 239, 82 So. R. 489; State v. Penny, 113 Iowa 691, 84 N. W. R. 509; Young v. State, 90 Md. 579, 45 Atl. R. 531; State v. Priest, 117 Me. 223, 103 Atl. R. 359; State v. Barrington, 198 Mo. 23, 95 So. W. R. 235. A mild degree of persistency in such questioning is sometimes sanctioned. People v. Simsen, 153 Cal. 387, 95 Pac. R. 863; State v. Banneik, (N. J.) 64 Atl. Rep. 994. When considering such a confession, however, trial courts should exercise great diligence to ascertain whether such questioning was so repeated and persistent and applied under such attending circumstances of intimidation or of inequality between the interrogator and the accused as to impair the freedom of will of the latter and thereby amount to compulsion. The effect as well as the form of the compulsion should be carefully weighed and considered, for a confession obtained by compulsion must be excluded, whatever may have been the character of the compulsion. Ziang Sung Wan v. United States, 266 U. S. 1, 69 Law Ed. 131, decided October 13, 1924.

See also Bates v. State, 78 Fla. 672, 84 So. R. 373.

Because of the great probability that the confessions, if made at all, were not freely and voluntarily made and because of it appearing that the verdict of the jury was probably largely influenced by the admission in evidence of the alleged confessions the judgment should be reversed and it is so ordered.

Reversed.

TERRELL, C. J., AND WHITFIELD, STRUM AND BROWN, J. J., concur.

ELLIS, J., dissents.

ELLIS, J. (dissenting): The plaintiffs in error robbed a negro named Andrew Morgan, driver of an ice wagon for the Consumers Ice Company, taking from him about fifteen dollars in paper money and coin. The accused accomplished the robbery by putting the victim in fear of personal injury by the use of pistols which they pointed at him while they relieved the negro of his money. The two were convicted of the offense and seek to reverse the judgment on writ of error.

The assignments of error are four in number. The first is not argued and is therefore abandoned. The second and third question the court's ruling in "permitting the witnesses on behalf of the State to testify" to confessions made by the defendants and to conversations between them over objections interposed "upon all of the grounds of said objections stated." The words in quotations are common to both assignments. The fourth assignment is based upon overruling a motion for a new trial, under which assignment counsel questions the sufficiency of the evidence to support the verdict.

We think there is no merit in that assignment. The evi-

dencè was ample to convict the two persons accused of the crime.

The second and third assignments of error are argued together. It has long been the practice at the bar, and this Court has by its decisions consistently required the practice to be observed, that each error should be distinctly specified and separately assigned. See Williams v. State, 58 Fla. 138, 50 So. R. 749; Emerson v. Ross, 17- Fla. 122; McMillan v. Warren, 59 Fla. 578, 52 So. R. 825; Maloy v. State, 39 Fla. 432, 22 So. R. 719; Burt v. Fla. S. Ry. Co., 43 Fla. 339, 31 So. R. 265; Strobhar v. State, 55 Fla. 167, 47 So. R. 4.

It would be difficult to frame an assignment of error in more general and less definite terms, conveying at the same time less information to the court about the alleged error, than the language in which the second and third assignments were cast. There were nine or ten witnesses for the State; some of them called to the stand as many as three times. Some testified to admissions made by one or both of the defendants in conversation among themselves and others while confined in a cell. The conversations were overheard by witnesses who were in adjoining cells. The record does not disclose that the admissions made by the defendants were made under the influence of any inhuman or deliberately cruel treatment of the prisoners by the officers. They were made after the defendant Rowe had been struck by the officer and had been taken back to his cell. The conversations between the four inmates of the cell were not in the nature of confessions but were in the nature of plans for their defense and the making way of a witness for the State. In the conversation which occurred between them there were admissions of guilt but the object of it was to plan a defense and consisted of suggestions as to the best method of defending the charges against them.

A man named Chevis, an officer, who seemed to carry his feelings or sense of honor "on his sleeve," became excited because while questioning one of the defendants, not in the cell but in the office before the conversation occurred in the cell, the defendant denied an implied accusation contained in the officer's question, whereupon the officer struck the prisoner with a piece of garden hose. Such an exhibition of ferocity on the part of a guardian of the peace is, of course, deplorable and a sad commentary upon a police system which makes it possible, but it does not appear that the admissions of either of the defendants were made under the influence of such disgraceful treatment. After the transaction occurred the defendant was taken back to the cell and he and his fellow inmates began the conversation which is held by the majority opinion to be inadmissible, though the testimony of no certain witness is named in the assignments of error nor is the point on which the assignments are made supported by the record.

There is no error in the record so flagrant as to require a reversal of the judgment in the interests of justice; therefore, I think the judgment should be affirmed.